UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                              Bankruptcy No. 05-30505
                                                                                    Chapter 7
Traci J. Weaver,

        Debtor.
_____/

Michael L. Wagner,

        Plaintiff,
    vs.                                                                          Adversary No. 07-7004

Dakota West Credit Union,

        Defendant.
_____/

**MEMORANDUM AND ORDER**

This adversary proceeding was commenced by Complaint filed on March 15, 2007, by Michael L. Wagner, the Chapter 7 trustee assigned to this case. The trustee seeks a determination that a loan payment made by Debtor Traci L. Weaver to Defendant Dakota West Credit Union within 90 days of her bankruptcy filing constitutes a preferential transfer and is avoidable pursuant to 11 U.S.C. § 547. By Answer filed April 3, 2007, the credit union affirmatively alleges that the loan payment falls under the "ordinary course of business" exception under 11 U.S.C § 547(c)(2) and is therefore not avoidable.[1]  The following constitutes the Court's findings of fact and conclusions of law.

---

[1] The credit union also affirmatively alleged earmarking and constructive trust defenses in its Complaint but did not pursue them either at trial or in its post-trial brief. The Court deems them abandoned.

I.  FINDINGS OF FACT

Debtor was a credit union employee and member. Denton Zubke, the credit union's chief executive officer, testified that he was involved with Debtor's hiring in 2004. During Debtor's employment interview, she mentioned that she would need to take some time off at Christmas because she planned to take a trip with her family. She had planned to pay for the trip with money owed to her from her former employer, but she learned that the money would not reach her in time, and on December 20, 2004, Debtor obtained a $1,500.00 unsecured loan from the credit union. She told Zubke that she would repay the loan using either the payment from her former employer or her tax return, whichever she received first. The maturity date of the loan was March 15, 2005, and Debtor paid off the loan in full with a personal check in the amount of $1,559.41 on February 3, 2005.

Zubke testified that there was nothing unusual about Debtor's loan. He said that unsecured term loans are common, especially toward the end of the year around tax time, for Christmas presents or some other pent-up demand that consumers may have. Debtor was assessed a $35 loan origination fee that Zubke testified is typical for loans of $3,000 or less. The interest rate on the loan was 12.9%, but the federal government requires the origination fee to be calculated as part of the finance charge because it is a cost of getting the loan. The promissory note therefore indicates an annual interest rate of 23.22%. The credit union has a written loan policy, and Zubke testified that his understanding was that all of its provisions were complied with as to Debtor's loan. Specifically, he explained that to obtain an unsecured consumer loan, a credit union member fills out an application, and, if the member has not previously loaned money from the credit union—as was the case with Debtor—the credit union is required to pull a credit report. After doing a little background

history, the credit union either approves or denies the loan application. In Debtor's case, Zubke testified that Debtor filled out an application through a staff member at the New Town branch, and he personally approved the loan as he does for all loans by credit union employees. He did not testify as to whether a credit report was pulled or any other background check was performed.

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 17, 2005.

## II. CONCLUSIONS OF LAW

The credit union does not dispute that Debtor's loan payment on February 3, 2005, was a preferential transfer under section 547. See 11 U.S.C. § 547(b) (listing the elements of a preferential transfer). Instead, the credit union asserts the trustee may not avoid the transfer because it falls under the ordinary course of business exception under section 547(c)(2).

Section 547(c)(2) of the Bankruptcy Code rendered[2] unavoidable an otherwise preferential transfer:

(2) to the extent that such transfer was—

    (A)    in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

    (B)    made in the ordinary course of business or financial affairs of the debtor and the transferee; and

---

[2] Section 547 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Although this adversary proceeding was filed after the October 17, 2005, effective date of BAPCPA, the main case was commenced prior to October 17, 2005, and BAPCPA is inapplicable. See BAPCPA, 109 P.L. 8 § 1501(b)(1) ("[T]he amendments made by this Act shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act."); see also Guerriero v. Kilroy (In re Kilroy), 354 B.R. 476, 496 (Bankr. S.D. Tex. 2006) (pre-BAPCPA law applies in an adversary proceeding filed after October 17, 2005, where the main case was filed before October 17, 2005).

>   (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2). Like the other section 547(c) exceptions, the policies underlying the ordinary course of business exception are two-fold: (1) to encourage creditors to continue dealing with troubled debtors, and (2) to promote equality of distribution. Union Bank v. Wolas (In re ZZZZ Best Co., Inc.), 502 U.S. 151, 161 (1991). The ordinary course of business exception was intended "'to leave undisturbed normal financial relations, because it does not detract from the general bankruptcy section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'" Id. at 160 (quoting H.R. Rep. No. 595, at 373 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6329). In other words, the section was "designed to encourage creditors to continue to deal with troubled debtors on normal business terms by obviating any worry that a subsequent bankruptcy filing might require the creditor to disgorge as a preference an earlier received payment." Barnhill v. Johnson, 503 U.S. 393, 402 (1992).

Because no precise legal test exists, resolution of the ordinary course of business question requires a peculiarly factual analysis. Harrah's Tunica Corp. v. Meeks (In re Armstrong), 291 F.3d 517, 527 (8th Cir. 2002). The credit union must establish each element by a preponderance of the evidence. Id.; Stewart v. Barry County Livestock Auction, Inc. (In re Stewart, 282 B.R. 871, 875 (B.A.P. 8th Cir. 2002).

The trustee argues that because there were no prior transactions between Debtor and the credit union, there is nothing to show the parties' ordinary course of financial affairs, and the exception is therefore inapplicable.

The requirements in subsection (c)(2)(A) that the transfer was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee"

4

Case 07-07004 Doc 16 Filed 07/25/07 Entered 07/25/07 14:42:45 Desc Main
Document Page 5 of 8

and subsection (c)(2)(B) that the transfer was "made in the ordinary course of business or financial affairs of the debtor and the transferee" would seem to presuppose that the debtor and the transferee previously had engaged in one or more previous transactions from which one might glean the ordinary course of their financial affairs with one another. As the trustee points out, such a historical approach is not possible in this case because Debtor and the credit union had not done business with each other prior to the transfer at issue. The Eighth Circuit Court of Appeals has not addressed the issue of whether a first-time transaction may qualify as within the ordinary course exception. Courts that have addressed the issue are split.

Some courts have articulated a *per se* rule that a first-time transfer as a matter of law cannot qualify as an ordinary course transaction for purposes of section 547(c)(2). See e.g., Miller v. Kibler (In re Winters), 182 B.R. 26, 28 (Bankr. E.D. Ky. 1995); Brizendine v. Barrett Oil Distributors, Inc. (In re Brown Transport Truckload, Inc.), 152 B.R. 690, 691 (Bankr. N.D. Ga. 1992).

Most courts addressing the issue, however, have rejected this approach and have held that a transaction may be in the ordinary course even if it is the first transaction between the debtor and the creditor. See e.g., Kleven v. Household Bank F.S.B., 334 F.3d 638, 642 (7th Cir. 2003); Gosch v. Burns (In re Finn), 909 F.2d 903, 907 (6th Cir. 1990); Tomlins v. BRW Paper Co. (In re Tulsa Litho Co.), 229 B.R. 806, 808 (B.A.P. 10th Cir. 1999); Remes v. ASC Meat Imports, Ltd. (In re Morren Meat & Poultry Co.), 92 B.R. 737, 740 (W.D. Mich. 1988); Compton v. Plains Marketing, LP (In re Tri-Union Development Corp.), 349 B.R. 145, 150 (Bankr. S.D. Tex. 2006); Katz v. Wells (In re Wallace's Bookstores, Inc.), 316 B.R. 254 (Bankr. E.D. Ky. 2004); Bohm v. Golden Knitting Mills, Inc. (In re Forman Enterprises, Inc.), 293 B.R. 848, 857 (Bankr. W.D. Pa. 2003); Warsco v. Household Bank F.S.B., 272 B.R. 246 (Bankr. N.D. Ind. 2002); Hovis v. Stambaugh Aviation, Inc.

(In re Air South Airlines), 247 B.R. 165, 171-72 (Bankr. D.S.C. 2000); Speco Corp. v. Canton Drop Forge (In re Speco Corp.), 218 B.R. 390, 398 (Bankr. S.D. Ohio 1998); Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.), 182 B.R. 728, 735 (Bankr. W.D. Va. 1995) .

Courts within the Eighth Circuit have agreed with the majority position and held that first-time transactions may fall within the scope of section 547(c)(2).  See Rice v. Hydro Temp Corp. (In re GS Inc.), 352 B.R. 858, 864 (Bankr. E.D. Ark. 2006); In re Old Fashioned Enterprises, Inc., 2001 Bankr. LEXIS 2130, at *5 (Bankr. D. Nebr. 2001); Meeks v. Harrah's Tunica Corp. (In re Armstrong), 231 B.R. 723, 731 (Bankr. E.D. Ark. 1999), aff'd, 260 B.R. 454 (E.D. Ark. 2001).

Every business relationship must begin with an initial transaction between the parties, and section 547(c)(2) does not contain any exclusion for first-time transactions.  To exclude them *per se* would unnecessarily restrict the meaning and intent of the statute by discouraging first-time creditors from doing business with a struggling debtor on normal business terms.  The majority view better serves to further the purpose underlying section 547(c)(2), and the Court therefore concurs with those courts that have rejected the *per se* rule. A first-time transaction between a debtor and a creditor in certain circumstances may qualify as an ordinary course transaction for purposes of section 547(c)(2).

Turning next to the individual requirements under the ordinary course exception statute, section 547(c)(2)(A) focuses on the nature of the original transaction creating the debt and whether it was ordinary. In re Armstrong, 231 B.R. at 731.  In cases where no prior history exists between the parties, a factual analysis should be conducted to determine whether the transaction would be one that would have occurred in the ordinary course of the financial affairs of a borrower or debtor in the same position.  In re Armstrong, 231 B.R. at 731.

The debt at issue was incurred normally in nearly all respects. Zubke testified that unsecured term loans like Debtor's are common, especially toward the end of the year. The loan's origination fee, interest rate, and maturity date were typical. Debtor filled out an application as required of all members.

Problematic to the credit union's case, however, is the issue of the credit report. Zubke testified that the process to obtain an unsecured consumer loan for a member who has not previously loaned from the credit union involves three steps: the member fills out an application, the credit union is required to pull a credit report, and after a little background history, the credit union either approves or denies the loan. There is no dispute that Debtor had not previously loaned from the credit union. A close examination of the trial transcript reveals that Zubke did not testify that a credit report or other background check was performed in Debtor's case. He testified specifically about her filling out an application with a staff member in the New Town branch and about his review of the application and approval of the loan, but he did not say anything about the "required" credit check. No documentary evidence shows that a credit report was pulled. The only indication that the credit union followed its ordinary course of business in this case is Zubke's general testimony about his understanding that all of the provisions of the written loan policy were followed in Debtor's case. The Court will not make the inferential leap necessary to find that Zubke's vague "understanding"of what happened in Debtor's case is of such probative force to support a finding that the credit union did indeed pull a credit report and perform a background check consistent with its ordinary course of business. The credit union has therefore failed to carry its burden of proof under section 547(c)(2)(A) by a preponderance of the evidence, and the ordinary course exception is inapplicable.

Based on the foregoing, the loan payment made by Debtor Traci J. Weaver on February 3, 2005, to Dakota West Credit Union in the amount of $1,559.41 is an avoidable preferential transfer under 11 U.S.C. § 547(b).  Consistent with 11 U.S.C. § 550, Dakota West Credit Union shall remit to the trustee, Michael L. Wagner, the sum of $1,559.41.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this July 25, 2007.

                **WILLIAM A. HILL, JUDGE**
                **U.S. BANKRUPTCY COURT**